## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS
### Eastern Division

| | |
|---|---|
| **JOHN DOE,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | **Case No. _____** |
| ) | |
| **HARVARD UNIVERSITY,** ) | |
| ) | |
| **Defendant.** ) | |
| _____) | |

## COMPLAINT

Plaintiff John Doe,[1] by and through his undersigned counsel, files this complaint against
Defendant Harvard University ("Harvard") for common law breach of contract and breach of the
covenant of good faith and fair dealing.

## INTRODUCTION

1.     Undeniably, private universities like Harvard have the authority (and under Title
IX, the obligation) to protect their students from sexual assaults committed by other students.
Just as certainly, private universities have considerable discretion to choose for themselves
appropriate sexual misconduct procedures specifying how they will investigate and adjudicate
allegations of sexual assault by their students.  Mr. Doe's claims in this case challenge neither of
these well-established propositions.

---

[1] "John Doe" is a pseudonym being used instead of Plaintiff's real name due to the nature of the
allegations in this lawsuit. *See* John Doe's Mot. for Leave to Proceed Under Pseudonym and for
Protective Order (Nov. 28, 2018).  Mr. Doe seeks to protect his privacy as well as that of his
accuser, who is identified as "Jane Roe."

2.    What Mr. Doe does challenge is the proposition that a private college—in conducting sexual misconduct investigations and adjudications—has *carte blanche* to discard its own policies, or to act arbitrarily, capriciously, maliciously, or otherwise in bad faith.  As set out below, each of these terms aptly describes Harvard's decision to railroad Mr. Doe into a campus proceeding that could result in him being suspended or even expelled—even though the sexual assault alleged against him did not take place at or near any Harvard property (indeed, in took place hundreds of miles away from Harvard), did not take place during the academic year (indeed, it took place more than sixteen months ago and not in connection with any Harvard program), does not involve a complainant (or even any witness) with any connection to Harvard, and in fact apparently does not involve any other connection with Harvard whatsoever.

3.    And, most strikingly, Harvard proposes to subject Mr. Doe to its campus disciplinary process here in direct defiance of the university's crystal-clear policy, discussed below, barring it from exercising jurisdiction in circumstances like these.

4.    Compounding the injustice of this decision is the fact that, eight months ago, the complainant chose to bring a civil lawsuit against Mr. Doe for the alleged sexual assault. Mr. Doe has sought to dismiss that lawsuit, in part.  If and when the court in the civil case grants Mr. Doe's motion (or if the court in that case denies the motion in whole or in part), discovery in that case will go forward regarding the alleged assault.  In other words, Ms. Roe is assured of having her day in court to make her case against Mr. Doe.  Likewise, Mr. Doe will be entitled to all the protections of a defendant in a civil case.  For example, he will have subpoena power to obtain witnesses and documents—something that he will not have in Harvard's campus

proceeding.  And he will have the right to cross-examine Ms. Roe and any other witness—

something that, again, he will not have the right to do in Harvard's campus proceeding.[2]

     5.      In other words, Harvard's proposed campus proceeding is not about vindicating or

protecting Ms. Roe, or any other member of the Harvard community, because no one is claiming

that Mr. Doe presents a danger to Ms. Roe while he is at Harvard (or elsewhere), nor does he

present any danger to any other Harvard student.  *Harvard's Title IX investigator herself* has

acknowledged as much in an e-mail to Mr. Doe stating: "[Your] alleged conduct, if true, . . .

*would not have the effect of creating a hostile environment for a member of the University*

*community . . . ."*  (Emphasis added).

     6.      Instead, Harvard's proposed campus case is about whether Harvard may be

complicit, notwithstanding its own policies and the lack of any connection between the

university and the alleged incident, in allowing a non-Harvard student to abuse the school's Title

IX process to gain leverage in a civil suit she has filed against a Harvard student.

     7.      If the Harvard Faculty of Arts and Sciences ("FAS")—a college within Harvard

University, the school at Harvard at which Mr. Doe is a student, and the school which has

---

[2] In fact, under earlier guidance from the U.S. Department of Education ("Department"), schools were instructed to deny students who are accused of sexual assault the right of cross-examination, or risk losing federal funding under Title IX.  *See* U.S. Dep't of Education, Dear Colleague Letter on Sexual Violence (April 4, 2011), https://www2.ed.gov/about/offices/list/ocr/letters/colleague-201104.pdf.  That guidance only recently has been rescinded, with the Department now publishing proposed new regulations that will guarantee accused students the right to cross-examine accusers.  *See* U.S. Dep't of Education, Letter Rescinding the Dear Colleague Letter on Sexual Violence dated April 4, 2011 and the Questions and Answers on Title IX and Sexual Violence, dated April 29, 2014 (Sept. 22, 2017), https://www2.ed.gov/about/offices/list/ocr/letters/colleague-title-ix-201709.pdf; U.S. Dep't of Education, Notice of Proposed Rulemaking, Title IX of the Education Amendments of 1972 (Nov. 15, 2018), https://www2.ed.gov/about/offices/list/ocr/docs/title-ix-nprm.pdf. Notwithstanding the Department's rescission of its old guidance, and its proposed new regulations, Harvard has informed Mr. Doe that it nonetheless still will not afford him the right of cross-examination in its campus discipline proceeding against him.

decided to investigate Mr. Doe—were following the University's own policy, it would not

pursue this case, because it has no jurisdiction to do so.  Instead, FAS's decision to investigate

Mr. Doe is causing, and will continue to cause, Harvard to be in violation of its own policy, not

to mention is causing, and will continue to cause, Harvard to inflict substantial damage on Mr.

Doe.

8.      In short, Harvard has violated its own contractual and common law obligations—

including the obligations embodied in its own sexual misconduct policies and procedures.

9.      For all of these violations of law, Mr. Doe now seeks redress.

## JURISDICTION AND VENUE

10.     The Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332, because Mr.

Doe is a citizen of Delaware, Harvard University is a citizen of Massachusetts, and the amount in

controversy exceeds $75,000.

11.     Venue properly lies in this Court under 28 U.S.C. § 1391(b)(1), (2) because

Harvard is a "resident" of Massachusetts within the meaning of the statute, and because a

substantial part of the events and omissions giving rise to Mr. Doe's claims occurred within this

judicial district.

## PARTIES

12.     Plaintiff John Doe is a citizen of the state of Delaware who is currently an

undergraduate student at Harvard.

13.     Defendant Harvard University is a private university formed under the laws of the

Commonwealth of Massachusetts and located in Middlesex County, Massachusetts.

## STATEMENT OF FACTS

14.      Mr. Doe enrolled as an undergraduate student at FAS in August 2016.  Beginning

at that time, and continuing through the events giving rise to this action, Mr. Doe paid substantial

tuition to attend Harvard.

15.      During the summer of 2017, Mr. Doe was living in a city hundreds of miles away

from Harvard, working at an internship.

16.      Ms. Roe was spending that summer in that same city, working at an internship.

17.      Ms. Roe is not a Harvard student.

18.      On the night of July 22, 2017, Mr. Doe went to a party at the apartment where

Ms. Roe was living with her roommates. At some point in the early morning hours of July 23,

2017, the two engaged in sexual activity.

19.      Ms. Roe now claims that she did not consent to this activity, and therefore that

Mr. Doe sexually assaulted her.  To be blunt, she now claims that he raped her.  (These

allegations are categorically false.)

20.      Ms. Roe initially filed a complaint with the local police department making this

claim, but, after investigation, law enforcement declined to prosecute.

21.      Ms. Roe then filed, in March 2018, a civil personal injury lawsuit against

Mr. Doe; that lawsuit remains pending.

22.      About seven months later, on or about October 17, 2018, Mr. Doe was summoned

to a meeting with Harvard's Office of Dispute Resolution ("ODR"), which is an office tasked by

FAS with investigating certain claims of sexual misconduct.  In that meeting, Mr. Doe learned

for the first time that ODR planned to investigate whether he had committed sexual assault in

violation of Harvard's Sexual and Gender-Based Harassment ("Policy," attached as Exhibit 1).

23.     Although ODR has refused to provide Mr. Doe a full accounting of the complaint against him, it has advised him that the investigation is based on allegations made by Ms. Roe.[3]

24.     When Mr. Doe, through counsel, asked Harvard's Title IX investigator why the University believed it had jurisdiction to investigate Ms. Roe's allegations, particularly given that Ms. Roe does not attend, and has not attended, Harvard; the incident did not take place at Harvard, anywhere close to Harvard, or even in-State; the incident did not take place during the academic year or in connection with any Harvard program; and none of the witnesses to Mr. Doe's knowledge were, or are, connected to Harvard in any way, the investigator referred only to Section III of the FAS Policies and Procedures, discussed below.

### Harvard University's Policies and Procedures

25.     Harvard University has adopted a Sexual and Gender-Based Harassment Policy.[4] The language in the Policy makes clear that it is meant to apply to all members of the University community.  *See* Policy (Exhibit 1) at 1 ("Harvard University is committed to maintaining a safe and healthy educational and work environment in which *no member of the University community is*, on the basis of sex, sexual orientation, or gender identity, excluded from participation in, denied the benefits of, or subjected to discrimination in any University program or activity.") (emphasis added).

---

[3] It is unclear, based on the record that Harvard has made available to Mr. Doe, whether Ms. Roe or her attorney in the civil case, or some other source, initially brought Ms. Roe's allegations to the Title IX office at Harvard.  Mr. Doe has asked, and Harvard has refused to answer—stating only that the official "Reporter" of the offense was the Harvard Title IX Coordinator, and declining to reveal how that official became aware of the allegation.

[4] https://hwpi.harvard.edu/files/titleix/files/harvard_sexual_harassment_policy_021017_final.pdf

26.     Nowhere does the Policy say that the different schools within Harvard have authority to depart from the dictates of the Policy, including with regard to the investigation and adjudication of sexual misconduct claims.  *See* Exhibit 1.

27.     In fact, the Policy states:

## Jurisdiction

> This Policy applies to sexual or gender-based harassment that is committed by students, faculty, staff, Harvard appointees, or third parties, *whenever the misconduct occurs*:
>
> 1. On Harvard property; or
>
> 2. Off Harvard property, *if*:
>
> a) the conduct was in connection with a University or University-recognized program or activity; or
>
> b) the conduct may have the effect of creating a hostile environment for a member of the University community.

Exhibit 1 (emphases to "Jurisdiction" in original; emphases to "whenever the misconduct occurs" and "if" added).

### FAS Policies and Procedures

28.     FAS has promulgated a document entitled *FAS Sexual and Gender-Based Harassment Policies and Procedures* ("FAS Policies and Procedures," attached as Exhibit 2).[5] Harvard University's website indicates that this document is part of the "Procedures" that the different schools at Harvard implement underneath the umbrella of the Policy.[6]

29.     The FAS Policies and Procedures acknowledges that the Policy applies to all Harvard Schools and units, including the FAS, and to all Harvard students, faculty, staff,

---

[5] https://www.fas.harvard.edu/files/fas/files/fas_sexual_and_gender-based_harassment_policy_and_procedures-1-13-16.pdf (last visited Nov. 28, 2018).

[6] *See* https://titleix.harvard.edu/procedures (last visited Nov. 28, 2018).

appointees, and third parties.  Exhibit 2 at 2.  It also states that, "[w]hile *the FAS adheres to the*

*University Policy and Procedures*, it is responsible for elaborating on and supplementing them to

suit our own needs and goals."  *Id.* at 3 (emphasis added).

30.     And then the FAS Policies and Procedures goes further, claiming for FAS not

only the authority to "elaborat[e] on and supplement[]" the University Policy, but also the

authority to ignore the jurisdictional limitations imposed by that policy (notwithstanding FAS's

previous commitment, in almost the same breadth, to "adhere[] to" the University Policy):

> The Faculty of Arts and Sciences, including the College and the
> Graduate School of Arts and Sciences, shares an additional
> commitment to training our students to be citizens and citizen
> leaders within a larger community beyond the borders of our
> campus.  For this reason, it is the expectation of the Faculty of Arts
> and Sciences that all students, whether or not they are on campus or
> are currently enrolled in a degree program, will behave in a mature
> and responsible manner.  *Consistent with this principle, sexual and
> gender-based misconduct are not tolerated by the FAS even when,
> because they do not have the effect of creating a hostile environment
> for a member of the University community, they fall outside the
> jurisdiction of the University Policy.*  Because sexual and gender-
> based misconduct are in direct opposition to our community values,
> cases involving such conduct may be referred by the relevant
> Administrative Board ("Ad Board") to the Harvard University
> Office for Sexual and Gender-Based Dispute Resolution ("ODR")
> for investigation in accordance with the University Procedures and
> the jurisdictional guidelines described in this Policy.

Exhibit 2 at 7 (emphasis added).

**Mr. Doe Submits to ODR That It Does Not Have Jurisdiction, but
ODR Continues to Investigate**

31.     On November 7, 2018, Mr. Doe submitted a detailed statement to Harvard, in

which he pointed out that FAS does not have jurisdiction to investigate this matter.  The

investigator had acknowledged as much in writing to Mr. Doe's counsel on November 2, 2018.

Mr. Doe further noted that, even if FAS did have such jurisdiction (as it does not), FAS should

exercise its discretion not to do so, including because it could not give him a fair or thorough investigation under the circumstances.  Finally, Mr. Doe asked ODR at least to stay any proceedings until the pending civil litigation could be resolved, given the serious impact campus proceedings could have on his ability to defend himself in the ongoing civil case, and given that he has no disciplinary record at Harvard, nor, to his knowledge, has ever been accused of sexual assault in the past.

32.     Harvard's Title IX investigator responded, fewer than 24 hours later, rejecting all of these arguments.  She wrote, in part, that FAS "ha[s] the authority to adopt [its] own policies regarding student conduct."  She cited no authority for that assertion (and nor has Harvard subsequently provided any).  Rather, the Title IX investigator announced that the investigation would proceed.

33.     Only when, on November 15, 2018, the Department of Education issued its new, proposed rules for student disciplinary proceedings in alleged sexual assault cases (rules with which Harvard's current proceedings do not comply), did Harvard agree temporarily to pause its proceedings.  On November 27, however, Harvard's Title IX investigator announced that Harvard would continue its disciplinary proceedings against Mr. Doe (with no changes to its existing procedures), pressing him to appear for an interview the very next day (November 28) or, alternatively, later in the same week.

## CAUSES OF ACTION

### COUNT I – BREACH OF CONTRACT

34.     Mr. Doe incorporates by reference all of the paragraphs of this complaint as though fully set forth herein.

35.     Mr. Doe has paid Harvard substantial amounts of money for his education, and, in return, Harvard has contracted to provide Mr. Doe with access to its undergraduate degree program.

36.     Mr. Doe's enrollment in, and attendance of, classes at Harvard created in Mr. Doe a reasonable expectation that he would be allowed to continue in his course of study until he earns his degree from Harvard, provided that he maintains satisfactory grades and complies with Harvard rules and policies.

37.     Accordingly, a contractual relationship between Mr. Doe and Harvard exists, under which each party owes the other certain duties.

38.     The Policy sets forth, at least in part, the requirements of that contractual relationship.

39.     Harvard has failed, and is failing, to meet these requirements, including by subjecting Mr. Doe to a campus disciplinary process with respect to allegations as to which the university has no jurisdiction.

40.     More broadly, Harvard has breached, and is breaching, its contractual obligations by subjecting Mr. Doe to a disciplinary process that—in the ways, and for the reasons, set out above—is arbitrary, capricious, malicious, and being conducted in bad faith.

41.     As a direct and proximate result of these breaches, Mr. Doe has been, and is being, required to expend substantial amounts of his own time and resources, to the detriment of his studies and all of his other activities (including hours he otherwise would devote to his on-campus job), in engaging with Harvard's disciplinary process.

42.     As a direct and proximate result of Harvard's breaches, Mr. Doe also has been, and is being, required to expend substantial amounts of money in legal fees to defend himself in this case.  And if the investigation proceeds, he likely will spend a great deal more.

43.     Furthermore, Mr. Doe has been, and is being, subjected to a grave risk of an incorrect, and devastating, finding of responsibility for violating Harvard's Sexual and Gender-Based Harassment Policy:  in short, a grave risk of being incorrectly branded a rapist.  That would be a finding that would be reflected on his transcripts and would, at the least, substantially limit his opportunities for employment or graduate schooling.

44.     Accordingly, Harvard is liable to Mr. Doe for breach of contract and for all damages arising therefrom.

## COUNT II – BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING

45.     Mr. Doe incorporates by reference all of the paragraphs of this complaint as though fully set forth herein.

46.     Every contract contains within it an implied covenant of good faith and fair dealing.

47.     With that covenant comes an independent duty to provide basic fairness in the context of school disciplinary proceedings.

48.     Harvard has breached, and is breaching, that covenant by subjecting Mr. Doe to an investigatory and adjudicative process that—in the ways, and for the reasons, set out above— is arbitrary, capricious, malicious, and being conducted in bad faith.

49.     As a direct and proximate result of these breaches, Mr. Doe has been, and is being, required to expend substantial amounts of his own time and resources, to the detriment of

his studies and all of his other activities (including hours he otherwise would devote to his on-campus job), in engaging with Harvard's disciplinary process.

50.     As a direct and proximate result of Harvard's breaches, Mr. Doe also has been, and is being, required to expend substantial amounts of money in legal fees to defend himself in this case.  And if the investigation proceeds, he likely will spend a great deal more.

51.     Furthermore, Mr. Doe has been, and is being, subjected to a grave risk of an incorrect, and devastating, finding of responsibility for violating Harvard's Sexual and Gender-Based Harassment Policy:  in short, a grave risk of being incorrectly branded a rapist.  That would be a finding that would be reflected on his transcripts and would, at the least, substantially limit his opportunities for employment or graduate schooling.

52.     Accordingly, Defendant Harvard University is liable to Mr. Doe for breach of the covenant of good faith and fair dealing, and for all damages arising therefrom.

## PRAYER FOR RELIEF

Wherefore, Plaintiff Mr. Doe respectfully prays that this Court enter judgment on his behalf and against Defendant Harvard University, and order relief against Harvard as follows:

   a.   That this Court issue a temporary restraining order, and preliminary and permanent injunctive relief, restraining Defendant from proceeding with its campus disciplinary proceedings against Plaintiff;

   b.   That Defendant be ordered to pay John Doe compensatory damages in excess of Seventy-Five Thousand Dollars ($75,000.00), including, without limitation, damages to physical well-being, emotional and psychological damages, damages to reputation, past and future economic losses, loss of educational and

professional opportunities, loss of future career prospects, and other direct and consequential damages; and

c.   That this Court award Plaintiff his costs and expenses incurred in this action, including attorneys' fees, as well as such other and further relief as the Court deems just and proper.


DATED:  November 28, 2018                 _____/s/_____
                                          Rebecca LeGrand, BBO #660437
                                          LeGrand Law PLLC
                                          1775 Eye Street NW, Suite 1150
                                          Washington, DC 20006
                                          T: (202) 587-5725
                                          rebecca@legrandpllc.com

                                          Justin Dillon (*pro hac vice* application forthcoming)
                                          William Pittard (*pro hac vice* application forthcoming)
                                          Amelia Schmidt (*pro hac vice* application forthcoming)
                                          KaiserDillon PLLC
                                          1099 Fourteenth Street NW, 8th Floor—West
                                          Washington, DC 20005
                                          T: (202) 640-2850
                                          F: (202) 280-1034
                                          jdillon@kaiserdillon.com
                                          wpittard@kaiserdillon.com
                                          aschmidt@kaiserdillon.com

                                          *Attorneys for Plaintiff John Doe*

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on this 28th day of November, 2018, I served the foregoing upon the following counsel for Harvard University via e-mail:

Daniel Cloherty
Victoria Steinberg
Todd & Weld LLP
One Federal Street
Boston, MA 02110
617-720-2626

Ellen Fels Berkman
University Attorney
Harvard University
1350 Massachusetts Avenue
The Richard A. and Susan F. Smith Campus Center, Suite 980
Cambridge, MA 02138
(617) 496-1108 (telephone)
(617) 495-5079 (facsimile)
<u>ellen_berkman@harvard.edu</u>

*Attorneys for Defendant Harvard University*

_____/s/_____
Rebecca LeGrand