UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JACK DOE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No. 18-CV-12462-IT |
| v. ) | |
| ) | |
| PRESIDENT AND FELLOWS OF ) | |
| HARVARD COLLEGE, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OF LAW IN SUPPORT OF
## DEFENDANT'S MOTION TO DISMISS THE COMPLAINT

Defendant President and Fellows of Harvard College ("Harvard"), by and through its undersigned counsel, hereby submits this Memorandum of Law in Support of its Motion to Dismiss. As explained below, Plaintiff's Complaint fails to state a claim on which relief can be granted and must be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6).

## Introduction

Plaintiff Jack Doe, a current Harvard student, brought this breach of contract case in an effort to prevent Harvard from investigating a serious allegation of off-campus sexual misconduct by Mr. Doe. Plaintiff's allegations, however, fall far short of what is required to survive a motion to dismiss. Indeed, the relevant Harvard policies, attached to the Complaint, make clear that Harvard is *expressly authorized* to conduct that very investigation. For that reason, Plaintiff's Complaint must be dismissed.

1

Specifically, Plaintiff Jack Doe, a student currently enrolled in an undergraduate program overseen by Harvard's Faculty of Arts and Sciences ("FAS") (*see* Complaint ¶¶ 7, 14), alleges that Harvard has breached its contractual obligations to him and has violated the covenant of good faith and fair dealing by "subjecting [him]" to a disciplinary process with respect to sexual misconduct that he allegedly engaged in off-campus during the Summer of 2017. Complaint ¶¶ 39, 48. Plaintiff argues that Harvard's Sexual and Gender-Based Harassment Policy (the "University Policy"), a copy of which is attached as Exhibit 1 to the Complaint, prohibits FAS from investigating the alleged sexual misconduct because it occurred off-campus, was not committed in connection with a Harvard-recognized program or activity, and did not create a hostile environment for any member of the Harvard community. Complaint ¶¶ 2, 27.

Notably, Plaintiff's Complaint admits that FAS has enacted its own policy, the Sexual and Gender-Based Harassment Policy and Procedures for the Faculty of Arts and Sciences (the "FAS Policy"), and attaches a copy of that FAS Policy. *See* Complaint at Ex. 2. The Complaint explains that the FAS Policy specifically authorizes investigations and discipline of FAS students who allegedly commit sexual misconduct that falls outside the jurisdictional scope of the University Policy. *See* Complaint ¶ 30 (stating that "sexual and gender-based misconduct are not tolerated by the FAS even when . . . they fall outside the jurisdiction of the University Policy"). Plaintiff contends, however, that the University Policy somehow bars the FAS from enacting and enforcing this provision, *see* Complaint ¶ 3, that the FAS "has no jurisdiction" to conduct its proposed investigation, *id.* ¶ 7, and that the FAS has improperly "ignore[d] the jurisdictional limitations imposed by [the University Policy]." *Id.* ¶ 30.

2

As explained below, Plaintiff's tortured reading of the University Policy and the FAS Policy is inconsistent with the plain language of the two policies, and Plaintiff's claims for relief must accordingly be dismissed. *Nothing* in the University Policy prohibits FAS from enacting its own rules and regulations relating to off-campus sexual misconduct committed by its students. To the contrary, the University Policy *expressly* contemplates that each of Harvard's various schools—including FAS—may enact and enforce their own policies *in addition to* the policies announced by the University Policy. *See* Complaint at Exhibit 1, p. 1 ("[i]t does not preclude application or enforcement of other University or School policies"). Indeed, the FAS Policy—in a separate section addressing "Other Sexual Misconduct" not governed by the University Policy –does precisely that. *See* Complaint at Exhibit 2, p. 7-8.

# I
# FACTUAL ALLEGATIONS

A. **The July 22-23, 2017 Alleged Sexual Assault**

On or about July 22, 2017, Plaintiff Jack Doe, a student enrolled Harvard University's FAS, allegedly met Jane Roe, a student from another university. Complaint ¶¶ 14-18. At the time, the two were not attending or participating in any Harvard-related program or activity and were located in a city some distance from Cambridge, Massachusetts. *Id.* Ms. Roe contends that, during the late evening or morning hours of July 22-23, 2017, Mr. Doe sexually assaulted her. *Id.* ¶ 19. Ms. Roe subsequently filed a civil lawsuit against Mr. Doe. *Id.* ¶ 21.

B. **Harvard's Sexual and Gender-Based Harassment Policy (the "University Policy") and the FAS Policy on Other Sexual and Gender Based Misconduct (the "FAS Policy").**

1. **The University Policy**

As the Complaint alleges, Harvard University has adopted the University Policy which applies to all members of the University community. Complaint ¶ 25.

In a provision labelled "Jurisdiction," the University Policy explains that it applies to "sexual or gender-based harassment that is committed by students, faculty, staff, Harvard appointees, or third parties, whenever the misconduct occurs: (1) on Harvard property; or (2) off Harvard property, if (a) the conduct was in connection with a University or University-recognized program or activity; or (b) the conduct may have the effect of creating a hostile environment for a member of the University community." *See* Complaint ¶ 27; *see also id.*, Ex. 1, p. 3.

Notably, the University Policy also states that ***"[i]t does not preclude application or enforcement of other University or School policies."*** *See* Complaint, Ex. 1 at 1 (emphasis added). Indeed, there is no provision in the University Policy that prohibits any of Harvard's various schools from imposing and enforcing their own independent rules regarding appropriate standards of conduct. *Id.*, Ex. 1 *passim.*

2. **The FAS Policy**

Harvard's FAS operates the academic program in which Plaintiff is currently enrolled a student. Complaint ¶¶ 7, 14. The FAS has enacted the FAS Policy, which is applicable to all students within the FAS and which is available to all students and the general public online. *Id.* ¶ 28 & n. 5; *see also id.* at Ex. 2.

The FAS Policy explains that Harvard has adopted the University Policy and that the University Policy "applies to all Harvard Schools and units, including the FAS." *See* Complaint, Ex. 2, p. 2. The FAS Policy further explains that "[w]hile the FAS adheres to the University Policy and Procedures, it is responsible for elaborating and supplementing them to suit our own needs and goals." *Id.*, p. 3. By way of example, unlike the University Policy, the FAS Policy includes a collection of provisions addressing prohibited relationships between FAS Faculty members and students, as well as other provisions addressing relationships between individuals of different University status. *Id.*, p. 8-9.

Section II of the FAS Policy adopts the University Policy and reproduces that University Policy in its entirety. *Id.*, p. 4-7. Section III of the FAS Policy then expands upon the University Policy with provisions addressing "Other Sexual and Gender-Based Misconduct" that fall "outside the jurisdiction of the University Policy." *Id.*, p. 8-9. That Section of the FAS Policy reads, in relevant part, as follows:

> **III. OTHER SEXUAL AND GENDER-BASED MISCONDUCT**
>
> The University Policy defines sexual and gender-based harassment within the context of preventing discrimination within our community. The Faculty of Arts and Sciences, including the College and the Graduate School of Arts and Sciences, shares an additional commitment to training our students to be citizens and citizen leaders within a larger community beyond the borders of our campus. For this reason, it is the expectation of the Faculty of Arts and Sciences that all students, whether or not they are on campus or are currently enrolled in a degree program, will behave in a mature and responsible manner. Consistent with this principle, sexual and gender-based misconduct are not tolerated by the FAS even when, because they do not have the effect of creating a hostile environment for a member of the University community, they fall outside the jurisdiction of the University Policy. Because sexual and gender-based misconduct are in direct opposition to our community values, cases involving such conduct may be referred by the relevant Administrative Board ("Ad Board") to the Harvard University Office for Sexual and Gender-Based Dispute Resolution ("ODR") for

5

investigation in accordance with the University Procedures and the jurisdictional guidelines described in this Policy.

. . .

Sexual and gender-based misconduct, as defined by this FAS Policy, go beyond the University Policy to encompass behaviors that are in direct opposition to our educational and community values. That is, these behaviors constitute a failure to meet FAS's expectations of its students as citizens and citizen leaders within a larger community beyond the borders of our campus and therefore may be subject to discipline. These provisions indicate our commitment to expecting behavior consistent with our values in our interactions with members of our broader community, as well as in our nonacademic activities on campus.

The above provisions are necessary because there are instances when we must demonstrate – to the broader world as well as to our own community – that sexual and gender-based misconduct are not consistent with the values we expect all members of FAS to uphold. ODR will evaluate such allegations upon referral consistent with the guidelines provided by the FAS, and may consult with an Ad Board Liaison in the process. ODR retains the right to close a case if, among other reasons, it determines in its discretion that it cannot conduct a prompt, fair, and thorough investigation. FAS retains responsibility for investigating violations of other policies that may come to light during an ODR investigation.

*Id.*

**C.** **The Investigation Into Plaintiff's Alleged Sexual Misconduct Proceeds Under the FAS Policy.**

On or about October 17, 2018, Plaintiff learned that Harvard's Office of Dispute Resolution ("ODR") planned to investigate the alleged incident between Plaintiff and Ms. Roe. Complaint ¶ 22. Plaintiff alleges that when his counsel asked Harvard why Harvard's FAS believed it had jurisdiction to investigate Ms. Roe's allegations, the investigator referred counsel "to Section III" of the FAS Policy. *Id.* ¶ 24.

On November 7, 2018, Mr. Doe submitted a detailed statement to Harvard. *Id.* ¶ 31. In that statement, Mr. Doe reasserted his argument that FAS did not have jurisdiction to investigate the alleged assault. *Id.* In a response on November 8, 2018, Harvard's Title IX investigator once again clarified that "FAS 'ha[s] the authority to adopt

[its] own policies regarding student conduct'" and informed him that the investigation would proceed. *Id.* ¶ 32.

**D.      Plaintiff Files This Lawsuit Against Harvard.**

Thereafter, on November 28, 2018, Plaintiff filed the instant lawsuit against Harvard. In his Complaint, Plaintiff asserts two separate causes of action against Harvard: a claim for breach of contract (Count I) and a claim for breach of the covenant of good faith and fair dealing (Count II). *See* Complaint ¶¶ 34-52.

Plaintiff alleges that Harvard has breached its contract with him "by subjecting [him] to a campus disciplinary process with respect to allegations as to which the university has no jurisdiction." *Id.* ¶ 39. Plaintiff further alleges that Harvard's jurisdictional overreach amounts to engaging in a "disciplinary process" that is "arbitrary, capricious, malicious and being conducted in bad faith," which he contends is both a breach of contract (Count I) and a breach of the covenant of good faith and fair dealing that is implied in every contract (Count II). *Id.* ¶¶ 40, 48.

## II
## STANDARD OF REVIEW

In order to survive a motion to dismiss under Rule 12(b)(6), a complaint "must state a plausible, not a merely conceivable, case for relief." *Sepúlveda–Villarini v. Dep't of Educ. of P.R.,* 628 F.3d 25, 29 (1st Cir.2010). This standard requires that the factual allegations support the "reasonable inference that the defendant is liable for the misconduct alleged." *Haley v. City of Boston,* 657 F.3d 39, 46 (1st Cir.2011) (quoting *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009)) (internal quotation mark omitted).

Although all reasonable inferences are typically to be made in favor of the plaintiff on a motion to dismiss, to the extent there is a conflict between Plaintiff's

7

allegations and documents attached to a Complaint, "[i]t is a well-settled rule that when a written instrument contradicts allegations in the complaint to which it is attached, the exhibit trumps the allegations." *Young v. Wells Fargo Bank, N.A.,* 717 F.3d 224, 229 n. 1 (1st Cir.2013) (quoting *Clorox Co. P.R. v. Proctor & Gamble Commercial Co.,* 228 F.3d 24, 32 (1st Cir.2000)) (internal quotation marks omitted); *see also Yacubian v. United States*, 750 F.3d 100, 108 (1st Cir. 2014) (same).

## III
## ARGUMENT

**A.** **The University Policy Expressly Permits the FAS to Investigate and Discipline Students for "Other Sexual Misconduct" Not Covered by the University Policy.**

The two legal claims asserted by Plaintiff in this case rest upon a single faulty premise: Plaintiff's argument that the "jurisdiction" provision in the University Policy somehow prevents the various Harvard schools, including FAS, from investigating and, if appropriate, disciplining students for sexual misconduct that does not fall within the jurisdictional scope of the University Policy. Indeed, scattered throughout the Complaint are allegations contending that the University Policy *prohibits* Harvard's various schools from investigating any sexual misconduct that is not covered by the University Policy. *See*, *e.g.*, Complaint ¶ 3 ("And, most strikingly, Harvard proposes to subject Mr. Doe to its campus disciplinary process here *in direct defiance* of the university's crystal-clear policy…*barring* it from exercising jurisdiction in circumstances like these.") (emphasis added); *id.* ¶ 7 ("If the Harvard Faculty of Arts and Sciences…were following the University's own policy, it would not pursue this case, because *it has no jurisdiction to do so*. Instead, FAS's decision to investigate Mr. Doe is causing, and will continue to cause, Harvard *to be in violation of its own policy*.") (emphasis added); *see also id.* at ¶¶ 26, 30.

8

These allegations should not be credited by this Court, because the plain language of the University Policy states the opposite – i.e., that "[*i*]*t does not preclude application or enforcement of other University or School policies.*"  *See* Complaint, Exhibit 1 at 1 (emphasis added).[1]  In light of that unambiguous provision that the University Policy does not preclude application of the FAS Policy, Plaintiff's allegations to the contrary must be disregarded.  *Young*, 717 F.3d at 229, n.1.[2]

**B.    The FAS Policy Unambiguously Applies to "Other Sexual Misconduct" Committed by FAS Students Beyond the Harvard Campus**

Nor is there any doubt that the FAS Policy—which is also attached to the -- Complaint—applies directly to the Plaintiff's alleged misconduct here.  As the Complaint alleges, Harvard has consistently informed Plaintiff that its investigation has not arisen under the University Policy, but instead has arisen under Section III of the FAS Policy governing "Other Sexual and Gender-Based Misconduct."  *See* Complaint ¶¶ 24, 32.  That FAS Policy explains that Harvard's FAS expects "that all students, *whether or not they are on campus or are currently enrolled in a degree program*, will behave in a mature and responsible manner."  *See* Complaint, Ex. 2, p. 7 (emphasis added).  Thus, the FAS Policy also provides that sexual and gender based misconduct will not be tolerated by the FAS "*even when . . . they fall outside the jurisdiction of the University Policy.*"  *Id*.

---

[1] The FAS Policy echoes this very same point when it explains that the FAS "is responsible for elaborating on [the University Policy and Procedures] and *supplementing* them to suit [FAS's] own needs and goals." *See* Complaint Ex. 2, p. 3 (emphasis added).

[2] If that were not enough, the jurisdictional provision in the University Policy, by its express terms, applies *only* to that very same University Policy.  *See* Complaint, Ex. 1, p. 3 (explaining that the University Policy's jurisdictional provision applies to "*This* Policy") (emphasis added).  Indeed, *nothing* in the University Policy prohibits any of Harvard's various schools from establishing and enforcing additional standards regarding the conduct of their students in the broader community.[2]  *See generally* Complaint, Ex. 1, *passim*.

9

(emphasis added). The FAS Policy further explains that it is designed to address sexual and gender-based misconduct that:

> "*go[es] beyond the University Policy to encompass behaviors that are in direct opposition to our educational and community values.* That is, these behaviors constitute a failure to meet FAS's expectations of its students as citizens and citizen leaders within a larger community beyond the borders of our campus and therefore may be subject to discipline. These provisions indicate our commitment to expecting behavior consistent with our values in our interactions with members of our broader community . . ."

*Id*. (emphasis added).

In light of this language, Plaintiff's assertion that Harvard is somehow breaching its own policies by investigating his alleged off-campus sexual misconduct is specious. By enacting and publishing the FAS Policy, FAS informed its students that sexual and gender-based misconduct that was beyond the scope of the University Policy could still be subject to discipline. *Cloud v. Trustees of Boston University*, 720 F.2d 721, 724 (1st Cir. 1983) (holding that student may properly be subjected to both University-wide rules and school specific rules relating to student conduct and discipline).

Nor is there anything remotely unusual about FAS's effort to hold its students to appropriate standards of conduct in arenas beyond those governed by the separate, and narrower, University Policy. Courts have routinely upheld universities' efforts to impose standards of conduct on their students in connection with their interactions with the wider community. *See e.g., Doe v. The Ohio State University*, 136 F. Supp. 3d 854, 867 (S.D. Ohio 2016) (noting that "Courts that do analyze the issue usually find that universities may regulate the wholly off-campus activities of their students to the extent that regulation contributes to the universities' (usually broadly defined) mission."); *Hill v. Bd. of Trustees of Michigan State Univ.*, 182 F.Supp. 2d 621, 627 n. 2 (W. D. Mich.

10

2001) ("Hill fails to cite any case holding that a university violates the Constitution by suspending a student for off-campus acts. This Court doubts such a case exists because universities typically take into consideration many off-campus acts in deciding whether to admit or retain a student."); *Gomes v. Univ. of Maine Sys.*, 304 F.Supp. 2d 117, 126 (D. Me. 2004) ("The University's legitimate interest in punishing the student perpetrator of a sexual assault or protecting the student victim does not end at the territorial limits of its campus."); *accord Rosenthal v. New York University*, 482 Fed. Appx. 609, 2012 WL 1700843 (2d. Cir. May 16, 2012) at *4 (affirming district court's judgment that the Stern School of Business at NYU could properly apply its Code of Conduct to student who had committed insider trading off-campus during period when he was enrolled as a student).

Harvard's FAS has a legitimate interest in ensuring that its students do not engage in sexual and gender-based misconduct when they interact with the larger community beyond the borders of the Harvard campus. It has long taken that interest seriously, and has enacted policies that reflect its values about Harvard students' responsibilities in that larger community. There is nothing in the University Policy that prohibits FAS's decision to hold its students to such standards. Plaintiff's suggestion that the FAS Policy is somehow unauthorized or otherwise invalid is baseless.

### C. <u>Plaintiff Has Not Alleged a Breach of the FAS Policy.</u>

As explained above, the plain language of the policies attached to the Complaint make crystal clear that it is the FAS Policy, *not* the University Policy, that governs the investigation of Plaintiff's alleged off-campus sexual misconduct in this case. Plaintiff's Complaint has not alleged—nor can it plausibly allege—that Harvard has breached that FAS Policy in any way. For that reason, Plaintiff's claims for breach of contract cannot

11

survive. *Young*, 717 F,3d at 229 & n.1 (affirming dismissal of breach of contract claim where allegations are inconsistent with attached written instrument); *see also Pemberton v. Nationstar Mortgage LLC*, 331 F. Supp. 3d 1018, 1038 (C.D. Cal. 2018) (dismissing breach of contract claim where allegations are contradicted by the language of attached documents).

**D.     The Complaint Does Not State a Claim for Breach of the Covenant of Good Faith and Fair Dealing.**

For similar reasons, the Complaint fails to contain allegations sufficient to support Plaintiff's claim for breach of the covenant of good faith and fair dealing. "The covenant may not . . . be invoked to create rights and duties not otherwise provided for in the existing contractual relationship, as the purpose of the covenant is to guarantee that the parties remain faithful to the intended and agreed expectations of the parties in their performance. Accordingly, '[t]he requirement of good faith performance is...circumscribed by the obligations in the contract.'" *Doe v. W. New England Univ.*, 228 F. Supp. 3d 154, 180–81 (D. Mass. 2017), citing *Speakman v. Allmerica Fin. Life Ins.*, 367 F. Supp. 2d 122, 132 (D. Mass. 2005). Plaintiff's failure to identify any breach of the obligations set forth in the applicable FAS Policy necessarily means that Plaintiff cannot succeed on a claim concerning the "manner of performance" of those obligations. *Id.* (citing *Uno Rests., Inc. v. Bos. Kenmore Realty Corp.,* 441 Mass. 376 (2004)); *see also Eigerman v. Putnam Investments, Inc.*, 450 Mass. 281, 285-90 (2007) (affirming dismissal of complaint where unambiguous contract foreclosed plaintiff's claims for breach of contract and breach of the implied covenant of good faith and fair dealing).

Moreover, even if the allegations in the Complaint were sufficient to make out a claim for breach of contract (and they are not), the Complaint lacks any factual

allegations supporting Harvard's "bad faith" in breaching its policies. Allegations purporting to describe a breach of contract claim, without allegations supporting a claim of bad faith, are not enough to support a claim for breach of the implied covenant of good faith and fair dealing. *Cf. Equip. & Sys. For Indus., Inc. v. Northmeadows Const. Co.*, 59 Mass. App. Ct. 931, 932 (2003) ("As to the claim for breach of implied covenant of good faith and fair dealing, there is nothing in the complaint from which one might draw the reasonable inference that the refusal to sign was done in bad faith. Even assuming that the refusal to sign might permit an inference that there was a breach of contract, that fact alone would not permit an inference of a breach of an implied contract of good faith and fair dealing, implicating a dishonest purpose, consciousness of wrong, or ill will in the nature of fraud.").

Here, Plaintiff's Complaint contains no factual allegations relating to bad faith; it just baldly asserts that Harvard's investigation being conducted in bad faith. *See* Complaint ¶ 48. The mere statement that Harvard acted "in bad faith" is a legal conclusion unsupported by the necessary factual allegations to survive a motion to dismiss. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007).

E. **Plaintiff Has Not Alleged that the FAS Policy is Ambiguous, and Regardless Any Objection Relating to Harvard's Application of the "University Procedures" Is Moot.**

Harvard acknowledges that, at the December 11, 2018, hearing on Plaintiff's Motion for a Temporary Restraining Order and Preliminary Injunction, the Court questioned whether Section III of the FAS's Policy was sufficiently clear regarding the authority of the FAS Administrative Board (the "Ad Board") to refer this matter to Harvard's Office for Gender-Based Dispute Resolution ("ODR") for investigation. The

13

Court noted that Section III of the FAS Policy states that an ODR investigation based on such a referral is to be conducted "in accordance with the University Procedures and the jurisdictional guidelines described in this Policy." *See* Complaint at Ex. 2., p. 7. The Court questioned whether the reference to "jurisdictional guidelines described in this Policy" could be interpreted to refer to the "Jurisdiction" provision set forth in the University Policy. *Id.*

As an initial matter, Harvard respectfully submits that the FAS Policy language from Section III referenced here is *not* ambiguous on this point. The relevant language from Section III references "this Policy," a term which is expressly defined elsewhere in the FAS Policy as referring to the FAS Sexual and Gender-Based Harassment Policy. *See* Complaint at Exhibit 2, p. 3. Harvard's Sexual and Gender-Based Harassment Policy, by contrast, is defined throughout the FAS Policy as the "University Policy." *See id.* at Exhibit 2, p. 2. This distinction between the two terms is maintained throughout the FAS Policy and is clear in Section III, the provision at issue here. Indeed, permissive referral of "other sexual misconduct" to ODR for investigation would be meaningless if "the jurisdictional guidelines described in this Policy" referred to the "jurisdiction" provision set forth in the University Policy. This is so because *all* investigations of sexual and gender-based harassment that fall within the jurisdiction of University Policy are already required to be referred to ODR for investigation.

Regardless, even if there were an ambiguity here, it would not be sufficient to avoid a dismissal of Plaintiff's claims. Critically, *nowhere* in the Complaint does Plaintiff assert that an alleged breach occurred due to FAS's decision to refer the matter to ODR in accordance with the University Procedures rather than to conduct its own investigation

independent of ODR. To the contrary, Plaintiff asserts in his Complaint that FAS lacks *any* authority to conduct *any* investigation into the alleged sexual assault. *See* Complaint ¶¶ 3, 7, 26, 31, 39-40, 48. Thus, according to the Plaintiff, it is of no matter whether the investigation is to be conducted by the FAS Ad Board or by ODR: either investigation is allegedly invalid and amounts to a breach of Harvard policies. But as explained above, that alleged breach is belied by the plain language of the policies attached to the Complaint. Accordingly, Plaintiff's claims must be dismissed.

Finally, Harvard notes that even if FAS's referral of this matter to ODR were at issue here (and it is not), that issue has now been mooted. Specifically, Harvard has formally notified Plaintiff that FAS will only refer the matter to ODR for investigation if Plaintiff expressly consents to such a referral. *See* DE 24 (Status Report). In the absence of such consent, the FAS Ad Board will simply proceed with the investigation of Plaintiff's alleged off-campus sexual misconduct in a manner that is consistent with its own published rules and procedures. *Id.* That approach is authorized under the terms of the FAS Policy. *See* Complaint at Ex. 2, p. 7 (stating that FAS "may" refer the matter to ODR for investigation, but not mandating such referral). Accordingly, the claim that Harvard has somehow breached its contractual obligations to the Plaintiff by referring the matter to ODR for investigation rather than having the investigation conducted by the FAS Ad Board is unasserted in the Complaint, meritless in any event, and rendered moot. *Doe v. Brown University*, 896 F.3d 127, 129 (1st Cir. 2018) (where alleged sexual assault did not arise under Title IX, university notified alleged victim that she could submit a complaint alleging violations of University's separate Code of Conduct).

# IV
# CONCLUSION

For all the foregoing reasons, Defendant respectfully requests that its Motion to Dismiss be granted and that the Plaintiff's Complaint in this action be dismissed with prejudice.

                Respectfully submitted,

                */s/ Daniel J. Cloherty*
                Daniel J. Cloherty, BBO #565772
                dcloherty@toddweld.com
                Victoria L. Steinberg, BBO #666482
                vsteinberg@toddweld.com
                Alycia Kennedy, BBO #688801
                akennedy@toddweld.com
                TODD & WELD LLP
                One Federal Street
                Boston, MA 02110
                Telephone:    (617) 720-2626
                Facsimile:    (617) 227-5777

                *Attorneys for Defendant President and Fellows of Harvard College*

Dated: December 19, 2018

**CERTIFICATE OF SERVICE**

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as nonregistered participants on December 19, 2018.

                                                */s/ Daniel J. Cloherty*
                                                Daniel J. Cloherty